IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOE & NANCY DEFAZIO                                           PLAINTIFFS

VS.                                   CIVIL ACTION NO. 1:06CV973-HSO-JMR


CHIQUITA FRESH NORTH AMERICA L.L.C.;
DOLE FOOD COMPANY, INC.; CROWLEY LINER                 DEFENDANTS
SERVICES, INC., ABC CORPORATION &
XYZ COMPANY


<u>ORDER AND REASONS GRANTING DEFENDANTS'</u>
<u>MOTIONS FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is the Motion of Defendant Crowley Liner Services,

Inc. ["Crowley"], for Summary Judgment [78-1], the Motion of Defendant Chiquita

Fresh North America, LLC ["Chiquita"], for Summary Judgment [89-1], and the

Motion of Defendant Dole Food Company, Inc. ["Dole"], for Summary Judgment [94-

1], filed in the above-captioned cause pursuant to FED. R. CIV. P. 56.  Plaintiffs filed

Responses to each of the Motions on March 3, 2008 [107-1, 108-1, 109-1].  Crowley,

Chiquita and Dole [collectively "Defendants"] tendered Rebuttals on March 20, 2008

[136-1, 138-1, 139-1][1].  In addition, the Court heard oral arguments from the

parties on various motions, including Defendants' Motions for Summary Judgment,

on April 23-24, 2008.  After consideration of the parties' submissions, the record,

---

[1] Crowley filed a combined Rebuttal in support of each of their Motions for
Summary Judgment filed in the following expedited cases: David and Amy Wheeler, Civil
Action No. 1:07cv1096; Leon and Lois Cooper, Civil Action No. 1:07cv1095;  and Charlotte
Williams, Civil Action No. 1:06cv658.

and the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendants are entitled to judgment as a matter of law.  Accordingly, the Motions for Summary Judgment must be granted.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiffs owned two residential properties located at 4116 Finley Street and 4700 Finley Street in Gulfport, Mississippi, which were damaged or destroyed when Hurricane Katrina made landfall on August 29, 2005.  At the time Hurricane Katrina struck, all three Defendants were engaged in containerized cargo operations at the Port of Gulfport, including the business of storing and/or transporting goods from the Port to destination points throughout the United States.  In addition to its cargo operations, Chiquita and Dole stored paper rolls in certain warehouses leased from the Port.   At Crowley's request, John Fowler, a licensed engineer and inspector, conducted a survey and determined that Plaintiffs' rental properties, situated adjacent to Beach Boulevard/U.S. Highway 90, were located approximately 1.2 and 1.7 miles from the West terminal of the Port of Gulfport, respectively, and were approximately 14.7 feet above mean sea-level.  *See* Joe Fowler Aff. ¶¶ 6,7, att. as Ex. "J" to Crowley's Mot. for Summ. J.

Plaintiffs filed their Complaint on August 28, 2006, in the Circuit Court  of Harrison County, Mississippi, First Judicial District, alleging that as a result of Defendants' negligence and gross negligence, specifically their failure to evacuate their respective shipping containers and paper rolls from the Port of Gulfport prior to Hurricane Katrina, or alternatively their failure to adequately secure their

shipping containers and paper rolls, Plaintiffs' properties suffered substantial damage.  Plaintiffs also assert claims for trespass, toxic trespass, and public nuisance allegedly caused by Defendants' containers and paper rolls entering their Finley properties during Hurricane Katrina.  Crowley filed a Notice of Removal in this Court on September 22, 2006.  Chiquita and Dole filed Joinders in the Removal on the same date.

## II. DISCUSSION

### A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *See*

*id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).

Where "the summary judgment evidence establishes that one of the essential

elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all

other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v.*

*Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

  To rebut a properly supported motion for summary judgment, the opposing

party must present significant probative evidence, since "there is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir.

2004)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  If the

evidence is merely colorable, or is not significantly probative, summary judgment is

appropriate.  *See Anderson*, 477 U.S. at 249.  The nonmovant may not rely on mere

denials of material facts, nor on unsworn allegations in the pleadings or arguments

and assertions in briefs or legal memoranda.  *See Gaddis v. Smith & Nephew, Inc.,*

534 F. Supp.2d 697, 699 (S.D. Miss. 2008).

B. <u>Plaintiffs' Negligence Claims</u>

  To succeed on a claim for negligence, Plaintiffs must show "(1) the existence

of a duty 'to conform to a specific standard of conduct for the protection of others

against the unreasonable risk of injury', (2) a breach of that duty, (3) causal

relationship between the breach and alleged injury, and (4) injury or damages."

*Meena v. Wilburn,* 603 So. 2d 866, 870 n.5 (Miss.1992)(*citing and quoting Burnham*

*v. Tabb,* 508 So. 2d 1072, 1074 (Miss. 1987)).  The presence of a duty and breach of that duty are essential elements prior to any finding of negligence.  *See Rein v. Benchmark Const. Co.,* 865 So. 2d 1134, 1143 (Miss. 2004)(*citing Strantz v. Pinion,* 652 So. 2d 738, 742 (Miss. 1995)).  Plaintiffs contend that Defendants owed numerous duties to conform their conduct to protect their homes and property against an unreasonable risk of harm.

The record establishes that following Katrina, Crowley containers were not present on the 4116 Finley property, but only on the 4700 Finley property. Plaintiffs claim that Crowley owed a non-delegable duty to protect property nearby or adjacent to the Port of Gulfport under the Port and Waterways Safety Act, 33 U.S.C. § 1223, *et seq.*, specifically 33 C.F.R. §§ 160.101-160.115, including but not limited to securing all of its cargo containers.  *See* Pls.' Mem. in Resp. to Def. Crowley's Mot. for Summ. J. at p. 6.  Plaintiffs further contend that Crowley "owed a duty to prevent damage to plaintiffs' property, by exploring worst case scenarios involved in hurricanes, whether they could assign a probability or not."  *Id.* at p. 8. Plaintiffs also take issue with Crowley's position that certain "custom holds placed on certain containers prevented their removal prior to Katrina." *Id.* at p. 11.

As for Plaintiffs' allegations against Chiquita and Dole, the evidence shows that following Katrina numerous unidentified paper rolls were present at Plaintiffs' 4116 and 4700 Finley properties.  Plaintiffs maintain that while both Chiquita and Dole had evacuation plans in place for their Port properties, neither

acted quickly enough to fully implement the evacuation of paper rolls prior to Hurricane Katrina's landfall.  *See* Pls.' Mem. Resp. in Opp. to Chiquita's Mot. for Summ. J. at p. 3.

Defendants seek summary judgment on Plaintiffs' negligence claims, contending that Plaintiffs have failed to make the requisite showing that Katrina's force was  foreseeable, or that they breached a legal duty owed to Plaintiffs, if any. Plaintiffs argue that Defendants are liable to them for the damage to their properties because such damage was foreseeable:

> [r]easonable precautions do not only relate to the Defendants' actions in August 2005, but from the time they began service in the Port of Gulfport.  It is since that time that the defendants have ignored essential information which could have prevented the negligence ultimately responsible for the plaintiffs' injuries.  The defendants had from the time they began business at the Port of Gulfport and the opportunity each year to reevaluate their hurricane contingency plan-if not once every day looking at the U.S.S. Camille-to take reasonable precautions to prevent the damage done to Plaintiff's property.

Pls.' Mem. Resp. in Opp. to Chiquita's Mot. for Summ. J. at p. 13-14.

(1)   Existence of a Duty

Plaintiffs claim that Defendants willfully ignored the impact of past hurricanes and made a conscious decision not to perform any independent research about hurricane effects at the Port.  *See* Pls.' Mem. in Resp. to Crowley's Mot. for Summ. J. at pp. 5-7; *see also* Pls.' Mem. in Resp. to Chiquita's Mot. for Summ. J. at p. 4, 14; Pls.' Mem. in Resp. to Dole's Mot. for Summ. J. at pp. 2-3   Plaintiffs submit

that "Crowley's willful failure to investigate the effects on equipment not evacuated from the Port during Camille resulted in ... foreseeable and probable harm...."  Pls.' Mem. in Resp. to Crowley's Mot. for Summ. J. at p. 12. Plaintiffs argue that Dole "made a conscious choice to ignore Hurricane Camille's impact on paper rolls stored at the Port of Gulfport.  Dole's calculated decision to abandon its paper rolls to Katrina's fury, caused Plaintiffs' injury."  Pls.' Mem. in Resp. to Dole's Mot. for Summ. J. at pp. 9-10.

Plaintiffs further allege that each Defendant "had a non-delegable duty to secure its containers in a reasonably safe condition under ... the Ports and Waterways Safety Act ["PWSA"]."  Pls.' Mem. in Resp. to Crowley's Mot. for Summ. J. at pp. 16-17.  "The PWSA clearly imposes a duty on Crowley to protect the entire marine environment, including the land surrounding and adjacent to the Port of Gulfport."  *Id.* at p. 18.  With respect to Defendants' alleged lack of compliance with the PWSA, Plaintiffs rely on the proffered opinion and testimony of their proposed expert, David Cole.  However, following an extensive Daubert hearing conducted on April 23 and 24, 2008, the Court granted Defendants' Motions to Strike Mr. Cole and excluded him from testifying as an expert witness in this case.   Plaintiffs have not advanced any additional evidence to support this theory of negligence.  Moreover, this theory was not pled in the Complaint.  Even if it had been, it is clear from a reading of the PWSA that its provisions do not apply to the factual scenario presented in this case.

Turning to Plaintiffs' general negligence claim, Mississippi courts have held that the determination of the existence vel non of a duty of care is a question of law to be decided by the court. *See Foster by Foster v. Bass,* 575 So. 2d 967, 972 (Miss. 1990). "The important component of the *existence of the duty* is that the injury is '*reasonably foreseeable*,'" and thus it is an appropriate issue for the trial judge to decide. *Rein,* 865 So. 2d at 1143 (*quoting Lyle v. Mladinich,* 584 So. 2d 397, 399 (Miss. 1991) (emphasis in original)).

The record in this case unequivocally establishes that Port officials closely tracked Hurricane Katrina and its path from the dates when warnings were first issued, continuing through Friday, August 26, 2005, and until Monday, August 29, 2005. Plaintiffs' Complaint states that it was on Thursday, August 25, 2005, at 5:00 p.m., when the National Hurricane Center upgraded Katrina to a hurricane. *See* ¶ 14, Compl. Richard G. Henning, Defendants' meteorological expert and a Lieutenant Colonel in the United States Air Force, served as the Mission Director within the 53rd Weather Reconnaissance Squadron and was responsible for all meteorological data collection during hurricane penetration flights, including Hurricane Katrina. Henning stated that "[d]espite all prior forecasts of landfall . . . it was not until 4:00 p.m. on Friday, August 26, 2005, that the official National Hurricane Center ["NHC"] forecast for the landfall of Hurricane Katrina changed to include the Mississippi Gulf Coast, a shift of nearly 180 miles to the west from a previously predicted landfall track . . . " Richard Henning's Aff. ¶¶ 2 and 7, att. as

Ex. "A" to Crowley's Mot. for Summ. J., and as Ex. "11" to Dole's Mot. for Summ. J.; *see also* Nat'l Hurricane Ctr. Advisories, att. as Ex. "11" to Chiquita's Mot. for Summ. J.  The record further establishes that the Port and its tenants began preparations as soon as the foregoing information became known.

At the time Hurricane Katrina made landfall, Mr. Robert Weist was serving as the Terminal Manager for Crowley operations at the Port and oversaw the execution of the Hurricane Contingency Plan.  *See* Robert Weist Aff. ¶ 6, att. as Ex. "E" to Crowley's Mot. for Summ. J.  Weist stated that "following ... efforts [to have containers physically moved from the port], Crowley engaged its stevedore company at the Port to block stow the containers, trailers and equipment on its terminal." *Id.* at ¶ 7.

Dennis Kelly served as Vice-President of U.S. Ports for Dole and was responsible for Dole's preparation for the oncoming Hurricane.  *See* Dep. of Dennis Kelly at pp. 17-18, att. as Ex. "1" to Dole's Mot. for Summ. J.  Dole removed nearly half of its containers located at the Port and block stowed the remainder.  *See id.* at pp. 29-32.  Similarly, Chiquita made a decision to block stow its cargo containers at the Port.  *See* Dep. of Patrick Ferrell at p.97-98, att. as Ex. "1" to Chiquita's Mot for Summ J. and as Ex. "Q" to Crowley's Reb.

Block stowage is a storage mechanism employed at several U.S. ports, and is often incorporated into port hurricane contingency plans.  Block stowage can be defined as:

> ...the arrangement of cargo in a given space and in such a manner so
> as to ensure its easy identification, segregation and subsequent
> handling. Block stowage tends to confine, into one discrete and tightly
> drawn area, a homogenous grouping of similar cargo units.
> Consequently, block stowage typically offers the attributes of stability
> and strength in circumstances where such attributes are desired.

Report of Ronald Signorino, at p. 6, att. as Ex. "1" to Signorino's Aff., att. as Ex. "C" to Def. Mot. for Summ. J.

Mr. Signorino was tendered and accepted by this Court, following a Daubert hearing, as an expert in the field of marine terminal operations.   Mr. Signorino's testimony established that he had been responsible for formulating and implementing hurricane plans and preparations for ports located in Baltimore, Maryland; Norfolk, Virginia; Charleston, South Carolina; Miami, Florida;  New Orleans, Louisiana; and Houston, Texas.   *See*  p. 116, Tr. of Daubert Hearing conducted on April 23, 2008.  In his Affidavit, Signorino concludes that, as a matter of record, prior to Hurricane Katrina "there was no recorded incident in the United States of a hurricane striking a marine terminal facility and separating a block stow beyond the perimeters of an affected facility or forcing containers/trailers beyond the perimeters of an affected facility." Ronald Signorino's Aff. ¶ 7, att. as Ex. "C" to Def. Mot. for Summ. J.

The record establishes beyond dispute that the Port and its tenants had "never experienced the separation of a block stow beyond the perimeters of its marine terminal at the Port or any of its marine terminals around the world prior to Hurricane Katrina."  *See* Michael Hopkins' Aff. ¶ 8, att. as Ex. "D" to Crowley's

-10-

Mot. for Summ. J., and Robert Weist's Aff. ¶ 8, att. as Ex. "E" to Crowley's Mot. for
Summ. J.   Based upon the undisputed evidence, it is clear that Defendants
implemented their hurricane plans based on the predictions, reports, advisories and
warnings issued by the National Hurricane Center.  *See* Ronald Signorino's Report
at p.9, att. as Ex. "A-1" to Crowley's Mot. for Summ. J (detailing protocol for the
Port both at 72 hours and at 48 hours prior to landfall); Dep. of Dennis Kelly at pp.
22-40, 63-65, att. as Ex. "1" to Dole's Mot. for Summ. J.; Dep. of Patrick Farrell at
pp. 30-54, 96, att. as Ex. "1" to Chiquita's Mot. for Summ. J.  In addition, the record
demonstrates that the Port did not request or direct that Dole and Chiquita remove
their cargo, including paper rolls, from the warehouses located within the Port's
perimeter.  *See* Anthony Caranna, Jr.'s Aff. ¶ 12, att. as Ex. "3" to Chiquita's Reb.,
*See* Dep. of Patrick Ferrell at p.96-97, att. as Ex. "1" to Chiquita's Mot. for Summ. J.

In *Royal Beach Hotel, LLC v. Crowley Liner Services, Inc.,* 2007 WL 1499815,
*2 (S.D. Miss. March 14, 2007), and *Lee Brother, LLC v. Crowley Liner Services*,
2007 WL 188858744 (S.D. Miss. June 26, 2007), two cases very similar, if not
almost identical, to the present one, United States District Judge Bernard A.
Friedman made determinative findings addressing the existence and breach of any
duties owed by Port tenants:

> . . . [A]s a matter of law, Crowley did not breach any duty it owed to
> plaintiff. . . . [and did] as a matter of uncontested fact, take all
> measures as were prudent and reasonable under the circumstances in
> the short period of time between the issuance of the warning and the
> arrival of the hurricane. *The court also holds, as a matter of law, that
> defendant had no duty to take additional measures, beyond those*

-11-

> described below, because the enormously destructive force of Hurricane
> Katrina was unprecedented and defendant could not reasonably have
> foreseen that its containers might wash and blow away and cause
> damage to neighboring property unless additional, extraordinary
> measures were taken to secure or remove them.

*Lee Brother, LLC,* 2007 WL 1858744, at *5 (emphasis added).

> The court also holds, as a matter of law, that defendant had no duty to
> take additional measures, beyond those described below, because the
> enormously destructive force of Katrina was unprecedented and
> defendant could not reasonably have foreseen that its containers,
> trailers and chassis might wash and blow away and cause damage to
> neighboring property unless additional, extraordinary measures were
> taken to secure them.

*Royal Beach Hotel, LLC,* 2007 WL 1499815, at *2.

                                   * * *

> ... [T]he court concludes that both the extraordinary force of this storm
> and its ability to transport containers, trailers and/or chassis away
> from the port and onto and into neighboring property was
> unforeseeable, as these were "unusual and improbable or
> extraordinary occurrence[s]," *Rein,* 865 So.2d at 1144; *that defendant
> had no duty to take additional measures, beyond those described, to
> secure its property; and that defendant breached no duty to plaintiffs.
> The court rejects plaintiffs' view that defendant had a duty to "ensure"
> its containers would not wash away. Defendant is not an insurer, and
> its duty was only to take reasonable measures to prevent foreseeable
> harm from occurring to others.*

> The court concludes that plaintiffs' negligence claim fails because
> plaintiffs cannot prevail on two elements as to which they have the
> burden of proof. Under these circumstances, the court need not address
> defendant's Act of God defense.

*Id.* at * 5 (emphasis added).

"The doctrine of 'law of the case' is a rule of practice under which a rule of law enunciated by a federal court 'not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but (also) establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case.'" *Morrow v. Dillard,* 580 F.2d 1284, 1289-90 (5th Cir. 1978)(*quoting* 1B Moore's Federal Practice P 0.404(1) (2d ed. 1974).  "Where arguments have been considered by another judge in this district in cases involving very similar facts and the same controlling principles of law, principles of stare decisis, as well as the sound reasoning of that judge's opinion, dictate that this Court reach the same result." *Giles v. University of Mississippi ex rel. Khayat*, 2000 WL 33907681, 3 (N.D. Miss. 2000)(*citing Barrett v. Khayat,* Civil Action No. 3:97-CV-211-B-A (N.D. Miss. 1999)).

Keeping the foregoing rules in mind, the Court finds that the principles of law stated in Judge Friedman's decisions must carry great weight in this case.  The legal issues, as well as the facts, are so similar in this case to those presented in both *Lee Brother* and *Royal Beach*, that the undersigned is compelled to accord those decisions great deference.

The uncontested facts of this case coupled with general principles of Mississippi law on negligence lead the undersigned to conclude that Defendants did not owe Plaintiffs a duty to take any further steps or precautions, beyond those they had already taken, prior to the onslaught of the storm.  Defendants could not reasonably have foreseen that their containers might wash and blow away unless

additional measures were taken to secure or remove them.  For these reasons, this

Court need not resolve the question of whether, even at a distance of 1.2 to 1.7 miles

from the Port, Defendants owed Plaintiffs a duty in the first instance.[2]

    (2)   <u>Breach of Duty</u>

Plaintiffs argue that because Defendants had knowledge of the widespread

destruction wrought by Hurricane Camille and willfully ignored the effects upon the

Port and surrounding areas, they were negligent in their preparations for

Hurricane Katrina.

> Crowley did not take all human efforts to prevent their containers from
> causing harm to plaintiffs' property. ...  Crowley willfully neglected
> what a effect a Category Five [5] storm surge would have on its
> equipment since Crowley ignored Camille's effects at the Port of
> Gulfport.

Pls.' Mem. in Resp. to Def. Crowley's Mot. for Summ. J. at pp. 22-23.

The record demonstrates beyond dispute that containerized cargo operations

did not begin at the Port of Gulfport until 1973, several years after the ravages of

Hurricane Camille.  *See* Dep. of Michael Hopkins at p. 135, att. as Ex. "T" to

Crowley's Reb.  Therefore, even with full and complete knowledge of Camille's

destruction, Defendants could not have had a basis for comparison as containers

---

[2] In *Lee Brother, LLC v. Crowley Liner Services, Inc.*, 2007 WL 1858744, *3
(S.D. Miss. 2007), the distance between the Port and the subject property was not
made part of the record.  Notwithstanding, Judge Friedman utilized Mapquest to
determine that the plaintiff's property was located approximately three-quarters of
a mile from the Port of Gulfport.  Judge Friedman determined that "Crowley owed a
general duty of care even to owners of property located three-quarters of a mile from
the port." *Id.*

were not present at the Port during Camille.

In this case, Hurricane Katrina was unprecedented in its force and surge levels.  The evidence before this Court demonstrates that the block stow method employed by the Defendants was a time-tested and reliable method for storing cargo containers, at least until Katrina.  Based on the undisputed evidence tendered in this case and the relevant law, including this Court's previous decisions, the undersigned must conclude that Defendants did not breach any duty to Plaintiff, particularly since they "had no duty to take additional measures" beyond those described in the record.  *See Royal Beach, LLC*, 2007 WL 1499815 at *2.

The Court notes that at the time of Hurricane Camille, Dole was operating at the Port of Gulfport as Standard Fruit.  The record does not establish that Chiquita was even present at the Port during the time period of Camille.  Plaintiffs argue that because Dole was aware of paper rolls leaving the Port's perimeter during Camille, it was foreseeable that the same could occur during Katrina.  However, there is no evidence in the record sufficient to establish that any of the paper rolls found on Plaintiffs' Finley properties following Katrina were the property of either Dole or Chiquita.

During her deposition Plaintiff Nancy DeFazio testified as follows:

Q:    Other than their presence on the properties and in the area, do you have any evidence that the paper rolls caused any damage to either your property at 4116 or 4700 Finley?

A:    I didn't see them come in.  I just knew they were all there.

Q:    And nobody told you that the paper rolls cause any damage to your

property?

A:      No.

Dep. of Nancy DeFazio at p. 234, att. as Ex. "I" to Pls.' Mem. in Opp. to Dole's Mot. for Summ. J.

When asked about where the paper rolls came from and to whom they belonged, Plaintiff Joe DeFazio responded that: "I know they came from the Port generally.  Who they belong to, I do not know." Dep. of Joe DeFazio at p. 169, att. as Ex. "9" to Dole's Mot. for Summ. J.

Finally, there is evidence that other entities, including paper shippers Morgan Price and International Forest, stored paper rolls at the warehouses within the Port.  *See* Dep. of Stuart Jablon at pp.9-11, att. as Ex. "2" to Dole's Reb.; *see also* Dep. of Shawn Myers at p. 58, att. as Ex. "7" to Chiquita's Mot. for Summ. J.; Dep. of Jesse Parker at p. 134-135, att. as Ex. "2" to Chiquita's Mot. for Summ. J.  In light of the evidence before the Court, Plaintiffs are unable to demonstrate that the paper rolls at issue even belonged to Dole or Chiquita.  Absent the ability to make this threshold showing, it cannot be said that Dole or Chiquita breached any duty they may have owed Plaintiffs, or that any property belonging to Dole or Chiquita was the cause of any of the damages that Plaintiffs sustained.  Defendants Dole and Chiquita are therefore entitled to judgment as a matter of law on Plaintiffs' negligence claims.

Because two essential elements of duty and breach of duty are absent in this case, Defendants are entitled to summary judgment on Plaintiffs' negligence claims.

C.    Plaintiffs' Trespass, Toxic Trespass & Nuisance Claims

The record establishes that containers and unidentified paper rolls were present on Plaintiffs' properties located at 4116 and 4700 Finley following Katrina. As a result, Plaintiffs claim that Defendants are liable to them on theories of trespass and nuisance.  "Under Mississippi case law, such claims [trespass and nuisance] provide a mechanism to recover damages for injury not only to the physical realty, but also, to those rights incidental to the ownership of the property." *Great Northern Nekoosa Corp. v. Aetna Cas. and Sur. Co.*, 921 F. Supp. 401, 416 (N.D. Miss. 1996).

Defendants argue that Plaintiffs' damages were not reasonably foreseeable, based upon past experience and preparations for Hurricane Katrina.  They also maintain that Mississippi precedent holds that a trespass claim requires the "intention to enter upon the particular piece of land in question." *Thomas v. Harrah's Vicksburg Corp.,* 734 So. 2d 312, 316 (Miss. Ct. App. 1999) (citing the Restatement (Second) of Torts § 163).

Plaintiffs argue that because their properties were damaged by the physical invasion of Defendants' cargo containers and paper rolls, they are entitled to recover damages for trespass under Mississippi law.  "There is ample evidence to support plaintiffs' claim that the defendants knew with substantial certainty that their cargo containers could end up on plaintiff's property if they chose not to evacuate their cargo containers in preparation for Hurricane Katrina at the Port of Gulfport."  Pls.' Mem. in Resp. to Def. Chiquita's Mot. for Summ. J. at p. 15.

-17-

Alternatively, Plaintiffs contend that "a successful claim for negligent trespass simply requires plaintiff to produce evidence of harm to the property." *Id.* (*citing* the Restatement (Second) of Torts § 165).

In order to support a claim for trespass, Plaintiffs must establish the following elements: 1) an intrusion upon the land of another without a license or other right for one's own purpose; 2) damage to the plaintiff as a result of physical invasion of the land; and 3) credible evidence that [the Defendant] is the party responsible for the tort. *See Monsanto Co. v. Scruggs*, 342 F. Supp.2d 602, 606 (N.D. Miss. 2004). Whether or not Defendants entered upon Plaintiffs' properties for their own purposes, and whether they were responsible for cargo containers and paper rolls being on Plaintiffs' properties, merit examination.

In *Alexander v. Brown*, 793 So. 2d 601 (Miss. 2001), plaintiffs sued the defendants for trespass. In that case, the evidence established that the Brown defendants hired a third party to perform certain services and the third party committed a trespass upon plaintiffs' property. The Mississippi Supreme Court, noting the lack of evidence demonstrating that the defendants caused the third party to commit the trespass, held that: "the only evidence linking the Browns [defendants] to McGowan [third party] was that the Browns retained McGowan's services. This fact alone does not render them liable for his torts. If it did, then the Alexanders [plaintiffs] have an additional problem, since they retained his services too." *Id.* at 605.

Based on the record, the evidence establishes that each Defendant lacked the intent, general or otherwise, for their containers or paper rolls to enter upon Plaintiffs' properties, or that the containers and paper rolls entered upon Plaintiffs' properties for Defendants' own purposes.  Nor can it be said that any of the Defendants were "responsible" for the "tort" since it was the objective of the Defendants that their containers, paper rolls and other property not leave the Port's perimeter during Katrina.  Rather, it was the unprecedented force of Hurricane Katrina that moved these items, as well as other debris and material, to Plaintiffs' properties.  The mere fact that movement of Defendants' containers and paper rolls resulted in their placement on Plaintiffs' properties cannot be said to amount to a voluntary act by, or natural consequences that are attributable to, Defendants sufficient to support Plaintiffs' trespass claim.   Because summary judgment is required on the underlying claim for trespass, the evidence similarly does not support Plaintiffs' toxic trespass claim.  Defendants are entitled to judgment as a matter of law on these claims.

A private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of land.  *See* Restatement (Second) of Torts § 821(d) (1979).  A defendant may be liable for a private nuisance:

> if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either:
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling

liability for negligent or reckless conduct, or for abnormally dangerous
conditions or activities

Restatement (Second) of Torts § 163 (1979).

Defendants contend that Plaintiffs' nuisance claim cannot survive summary
judgment, inasmuch as a claim for nuisance requires, at a minimum, a showing of
negligence, which the Court has already concluded Plaintiffs cannot establish.
There is no evidence to support an argument that any of Defendants intentionally
and unreasonably invaded Plaintiffs' interest in the private use and enjoyment of
their land, nor does the record support Plaintiffs' negligence claims against
Defendants in this case, as stated previously herein.  Therefore, Defendants are
entitled to judgment as a matter of law on Plaintiffs' nuisance claims.

## III. CONCLUSION

This is yet another unfortunate case with tragic circumstances caused by an
unprecedented storm.  However, based upon the undisputed competent summary
judgment evidence and established legal precedents of this Court, Plaintiffs'
negligence, trespass and nuisance claims cannot withstand summary judgment.
Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons
stated more fully herein, the Motion of Defendant Crowley for Summary Judgment
filed on February 14, 2008 [78-1], pursuant to FED. R. CIV. P. 56, should be and is
hereby **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion of Defendant Chiquita for Summary Judgment filed on February 14, 2008 [89-1], pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion of Defendant Dole for Summary Judgment filed on February 14, 2008 [94-1], pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED**, this the 14th day of July, 2008.


_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE